THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (CINCINNATI)

| | | |
|---|---|---|
| NATHANIEL STEELE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:10-cv-00769-HJW |
| | ) | |
| OASIS TURF & TREE, INC., *et al.*, | ) | Defendants' Oasis Turf & Tree, Inc.'s |
| | ) | and Oasis Lawn Landscape, Inc.'s |
| | ) | Motion for Summary Judgment |
| Defendants | ) | and Memorandum in Support |

Pursuant to Federal Rule of Civil Procedure 56, Oasis Oasis Turf & Tree, Inc. and Oasis Lawn Landscape, Inc. ("Oasis" or "the Company"), moves for summary judgment on all counts of Plaintiff's Nathaniel Steele's ("Steele" or "Plaintiff") Complaint.  The basis for this motion is quite simple- Steele has no evidence to support his claim that Oasis terminated him for an unlawful reason.  In keeping with the rule that the simplest explanation is almost always the correct one, the undisputed facts show that Oasis terminated Steele's employment because it honestly believed that he was not performing his job, and such poor performance caused damage to Oasis's customers' property and costing Oasis thousands of dollars in repairs.  Steele's claims are based on nothing more than his own speculation and conjecture.  For these reasons, as explained more fully in the accompanying Memorandum in Support, Oasis is entitled to summary judgment on every count Steele has brought against it.

                                                                                                   Respectfully Submitted,

                                                                                                   /s/Kari Yeomans
                                                                                                   Kari Yeomans   0079517
                                                                                                   Attorney for Defendant

Caparella-Kraemer & Associates
4841-A Rialto Road
West Chester, Ohio 45069
Phone: (513) 942-7222
Fax: (513) 942-6444
E-Mail: kari@caparellakraemer.com

2

**MEMORANDUM IN SUPPORT**

I.  **Introduction**

Oasis terminated Steele in June 2009 for poor work performance which caused thousands of dollars damage to Oasis's customer's property. Oasis honestly believed that Steele would not change his performance and would continue to cause damage. Unable to accept the fact that he was responsible for her own termination, Steele dreamt up a number of theories as to why he was really terminated and brought suit against Oasis to remedy these perceived but imaginary injustices. Specifically, Steele claims that he was terminated because of his disability, his diagnosis of Diabetes Mellitus, and his request for reasonable accommodations. There are no facts in the record to support this claim.

Legal authority and the undisputed facts show that each of Steele's claims fails as a matter of law. For instance, Steele bases his discrimination claims on the mere fact that he has Diabetes. That is not enough. Moreover, Steele states that Oasis terminated his employment because he requested reasonable accommodations. The facts are undisputed that prior to Steele making such request for reasonable accommodation in writing, Oasis were providing Steele with the accommodations that he requested. Therefore, Steele's mere accusation is not enough.

II.  **Standard of Review**

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2011). "'The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient [to withstand summary judgment]; there must be evidence on which the jury could reasonably find for

3

the plaintiff.'" Mitchell v. Toledo Hosp., 964 F.2d 577, 581-82 (6th Cir. 1992) (*quoting* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)). "'If the evidence is merely colorable or is not significantly probative, summary judgment may be granted.'" Stump v. Cincinnati, Inc., 863 F.Supp. 592, 595 (S.D.Ohio 1994 (Spiegel, J.) (*quoting* Anderson, 477 U.S. at 249-50).

### III. Statement of Undisputed Facts

Steele was employed by Oasis beginning in June or July 2008. (Steele Dep. at 9). He was hired as a lawn technician. (Id.) Steele's job responsibilities were to fertilize lawns of Oasis's customers. (Id.) Upon his hiring, Steele received training on the use of the required machinery. Id. at 12. Oasis runs a lawn care fertilization business and has done so for 15 years. (R.Reindl Dep. at 6). Oasis provides the following services: lawn fertilization, tree and shrub care fertilization, treatment for trees and shrubs for insects and mites, and perimeter pest control. (Id. at 7). Oasis's staff fluctuates due to the seasonal nature of Oasis' business. (Id. at 10-11). Specifically, lawn technicians work 40 to 42 weeks per year from mid February to first week of December. (Id. at 11.) The lawn technicians are paid commission. (Id.) All of Oasis's lawn technicians are trained using the Ohio Safety Training Guide for Trained Servicepersons. (Id. at 13-14.) Moreover, the lawn technicians are trained to use the machinery involved in applying the fertilizer. (Id.at 14-15.) Steele acknowledged that he received such training by the supervisor. (Steele Dep. at 12.) Lawn technicians are provided a list of customers at the beginning of each day. (Id. at 19.) Since the lawn technicians work on commission, there was no set hours for them to work. (R.Reindl at 36.) Lawn technicians were expected to get a majority of their routes completed and could have taken as much or as little time to complete their work. (Id.)

As previously stated Steele began working for Oasis in June 2008 and completed that season without any issues. Steele began working for Oasis for a second season in 2009. During such

4

time, Jeff Cooper ("Cooper") was his supervisor. (Cooper Dep. at p. 21.) Beginning in late May 2009, Oasis began receiving numerous calls from customers with burns in their lawns. (Daye Dep. p. 19 and A.Reindl Dep p. 80 ) Cooper and Hes Coolidge ("Coolidge") was responsible for surveying the damages and repairing such damages. (Cooper Dep. p. 29 and A.Reindle Dep. p. 41 ). Due to the spike in the number of customer, Oasis began investigating the problem by pulling together a list of customers and the technician last on the property. (A.Reindl Dep. p. 46, 80 Daye Exhibit 1). Based upon that information, it was determined that Steele was the technician to last treat the lawns of the customer's calling to complain about burnt areas in their lawn. Id. Upon such determination, Cooper had had at least two conversations with Steele about the problem. (Cooper Dep. p. 31 ) On June 16, 2009, Cooper wrote Steele an Employee Action Slip which documented the conversation with Steele about the fertilizer burns. (Cooper Dep. p. 31). During the meeting that Cooper had with Steele on June 16, 2009, Steele admitted that he was not operating the machines as instructed. (Cooper Dep. p. 47) Moreover, Cooper let Steele know that Cooper had to repair the damaged lawns. (Cooper Dep. p. 44). All the damages observed and repaired by Cooper were where the sidewalk met the driveway, the driveway met the curb, or in the corners where the machines would be turned and not sporadic as if there was mechanical problem. (Cooper Dep. 70, 71). On June 17, 2009, Cooper had a service call on a property serviced by Steele. (Cooper Dep. p. 27). Cooper observed that Steele had rolled "through an area that a customer had renovated, essentially chewed it up, made it – soil, put seed down, and Nate [Steele] took the machine straight through the area." (Id.) Oasis lost that customer due to Steele's actions. Oasis' investigation showed that there were at least 15 properties damaged by Steele's action. (Daye Dep. Daye Exhibit 1) On June 17, 2009, R. Reindl and Cooper had a meeting with Steele. In that meeting, Steele was asked to admit to his actions. (Cooper Dep. p. 51-52) When

5

Steele would not admit to his action, Oasis determined that Steele would continue to cause damage and decided to terminate his employment. (R.Reindl Dep. p. 47and Cooper Dep. p.  26-29) Due to these damages and Oasis's lack of trust in Steele, Oasis decided to terminate Steele.  (Id.)  Oasis would not have terminated Steele if he would have taken responsibility and wanted to be a part of Oasis's team.  (A.Reindl Dep. p. 59).  Even after learning the Steele was causing damage, Cooper still allowed Steele to work because Cooper did not want Steele to lose money and thought that Steele would change. (Cooper Dep. p. 44,45)

   On the same day that Steele was terminated, Steele provided Oasis with a written request for reasonable accommodations.  Such request in Exhibit 4 of the R.Reindl Deposition.  Steele requested that Oasis  provide flexible leave for time off for  treatment, flexible leave for doctor visits, lunch breaks, breaks to eat or drink or take medication, and allow time to rest until blood sugar became normal.  (R.Reindl Dep. Exhibit 4).  Prior to such request, Oasis provided Steele with each of the accommodations.  (R.Reindl Dep. p. 38 and Steele Dep. p.24, 41 ).  Oasis allowed all lawn technicians an unlimited amount of time to complete their daily routes.  (R.Reindl Dep. p.36) Steele acknowledged that that he was allowed to take insulin shots, eat and drink as needed on the job and monitor his "sugars" throughout the day. (Steele Dep. p. 24).  Additionally, Steele was allowed to use Oasis' vehicle to go to doctor's appointments.  (Cooper Dep. p. 22,23 )  In late May or early June 2009, Steele had to be off work for illness and Oasis allowed Steele to use his vacation time to cover such time off since Steele had exhausted his sick days.  (A.Reindl Dep. p.21)  Steele provided the request for reasonable accomodation to Cooper and Cooper said okay to such and had no problem with the accommodations.  (Cooper Dep. p. 62,63)  Oasis decided to terminate Steele based upon Steele's poor performance and did not related the request for reasonable accommodation with its decision to terminate Steele.  (R.Reindl Dep. p.38 )  Oasis had

6

provided other employees with reasonable accommodations for similar health issues. (A.Reindl Dep. p. 33-37)

   IV.   **LEGAL ARGUMENT**

Oasis is entitled to summary judgment on Steele's disability discrimination claims under Federal and Ohio law. In his Complaint, Steele alleges he was discriminated against and Oasis terminated her employment because he suffers from diabetes and requested reasonable accommodations for the same. The undisputed facts establish that Steele was terminated because of his performance. Steele cannot establish a prima facie case of discrimination of that Oasis's explanation was pretext for discrimination.

   A. <u>Discrimination under ADA and ORC 4112</u>

Federal and Ohio law prohibits an employer from discharging an employee because of his disability. Since Ohio's disability discrimination law parallels the ADA in all relevant respects, w the same analytical framework, using cases and regulations interpreting the ADA can be used as guidance in the interpretation of the OCRA. <u>Daugherty v. Sajar Plastics, Inc.</u>, 544 F.3d 696, 702 (6th Cir.2008) (*citing* <u>Wysong v. Dow Chemical Co.</u>, 503 F.3d 441, 450 (6th Cir. 2007); <u>City of Columbus Civil Serv. Comm'n v. McGlone</u>, 697 N.E.2d 204, 206-07 (Ohio 1998)). The Americans with Disabilities Act, (ADA) 42 U.S.C. 12111 prohibits discrimination by a covered entity "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment. 42 USC § 12112(a). A prima facie case of disability discrimination under the ADA requires that a plaintiff show: 1) he or she is disabled; 2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) the employer knew or

had reason to know of the plaintiff's disability; and 5) he was replaced, or similarly situated, non-disabled employees were treated more favorable. Walsh v. United Parcel Service, 201 F.3d 718, 725(6th Cir. 2000) Plaintiff contends that Oasis discriminated against him by refusing to reasonably accommodate him. (Doc. No. 1 ¶ 37) He has no direct proof of this and must therefore rely on the McDonnell-Douglas standard. See Gant v. Wilson Sporting Goods Co., 143 F.3d 1042. 1047 (6th Cir. 1998). Once a plaintiff demonstrates a prima facie case of discrimination, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its decision. Manzer v. Diamond Shamrock Chemicals Co, 29 F.3d 1078, 1082(6th Cir. 1994) *citing* Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). If the defendant articulates a legitimate, non-discriminatory reason for its actions, the burden then shifts back to the plaintiff to show that defendant's articulated reason was false and that unlawful discrimination was the real reason. Id. at 1083 (*citing* St. Mary's Honor Center v. Hicks, 509 U.S. 502(1993)). In this case, Plaintiff is unable to do so. For the purpose of this motion, Oasis does not disagree that Plaintiff has diabetes which meets the definition of a disability under the ADA. However, Plaintiff is unable to meet the other elements.

1.  Plaintiff's Claim Must Fail Because He Was Not Qualified for His Position

A "qualified individual" is one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desire. For the purposes of this subchapter, consideration shall be given to the employer's judgment as to what functions of a job are essential…" 42 USC 12111(8). A disabled individual must prove that he or she would in fact be qualified for the job if the employer were to adopt the reasonable accommodation. See Monette v. Elec. Data Sys.Corp., 90 F.3d 1173, 1184 (6th Cir. 1996). Here,

Plaintiff cannot establish that he could perform the essential functions of his job with or without reasonable accommodation.

Plaintiff was hired by Oasis in June 2008 as a lawn technician.  Plaintiff's duties were to apply the proper fertilizer to Oasis' customers' lawns.  Plaintiff was either unable to perform his duties despite receiving training on how to do the job or Plaintiff simply did not want to perform his job duties.  At the beginning of Plaintiff's employment, he was performing as expected.  However, his performance changed sometime in 2009.  Such change in performance resulted in damage to the properties of several of Oasis' customers' lawns.  Once the lawn damage was linked to Plaintiff, Oasis was forced to send Cooper and a senior technician, Hes Coolidge ("Coolidge") into the field to make the necessary repairs.  Coolidge, Plaintiff's uncle and colleague at Oasis, stated the after Steele's termination, Coolidge has only been on a couple services calls compared to the several he had to go on during Steele's employment. (Coolidge Dep. p. 63)   Daye and A.Reindl were able to link most if not all the damages to lawns to Steele's failure to properly perform his job.  Cooper and R.Reindl both confronted Steele about the damages, but  Steele refused to acknowledge a problem.

Given the fact that Steele would not acknowledge there was a problem with his performance, he cannot establish that he was able to perform the essential functions of the position.  Nor can he identify what accommodation he could have given to enable him to perform his job properly.  Notwithstanding, Plaintiff cannot demonstrate how such accommodations would have enabled him to perform his job properly.

Moreover, Plaintiff and Oasis both testified that Plaintiff was given the accommodations requested at all time during Plaintiff's employment.  Plaintiff was allowed to monitor his blood sugar, eat and drink whenever he wanted.  Accordingly, Plaintiff cannot establish that there were

9

any accommodation beyond the ones he was given even prior to his request that would have enabled him to perform the essential functions of his job.

As Plaintiff cannot show he was qualified for his position, he cannot establish a prima facie case and all his discrimination claims must fail as a matter of law.

   2.   Plaintiff was not terminated because his disability

Plaintiff must also be able to show that the sole reason he was terminated was because of his disability. *See* Monette v. Elec. Data Sys. Corp., 90 F3d 1173, 1178. Plaintiff contends that he was fired because he had diabetes and had requested reasonable accommodations, but that is simply not the case.

Beginning in May 2009, Oasis began receiving numerous calls about damages to their customers' lawns. Due to the nature of the fertilization process, damages due to over application would not appear immediately. (R.Reindl Dep. p.48 ) After Oasis received numerous calls, Oasis began investigating to determine what was happening. The investigation demonstrated that all reported damages were on lawns treated by Plaintiff. The damages caused Oasis to lose customers and money. Upon determining that Plaintiff was causing the damages, Cooper discussed the problem with Plaintiff. Plaintiff refused to admit any wrong doing and refused to change his practices. Instead, Plaintiff on the same day he was terminated requested reasonable accommodations. However, the accommodations Plaintiff requested he was already receiving. Oasis terminated Plaintiff's employment because he refused to change his practices which had already caused Oasis to lose customers and money. Plaintiff's termination had nothing to do with his disability or his request for reasonable accommodation.

   3.   Plaintiff Cannot Show He was Replaced or That a Comparable, Similarly-Situated
        Individual was treated more favorably

Just as Plaintiff cannot establish the "qualified" element of his prima facie case, he

10

cannot establish that he was replaced by or treated differently than an employee. Walsh, 201 F.3d at 725. Replacement only occurs where "another employee is hired or reassigned to perform the plaintiff's duties." Grosjean v. First Energy Corp., 349 F.3d 332, 336 (6th Cir. 2003). In contrast, "[s]preading the former duties of a terminated employee among the remaining employees does not constitute replacement." Lilley v. BTM Corp., 958 F.2d 746, 752 (6th Cir. 1992). Here, under the applicable authority, Plaintiff was not replaced. (A.Reindl Dep. p. 68, 69 and Daye Dep. 27)

Nor can Plaintiff establish alternatively that Oasis treated a comparable, similarly-situated employee more favorably. Walsh, 201 F.3d at 725. This requires Plaintiff to demonstrate the alleged comparator is "similarly-situated in all relevant respects" Clayton v. Meijer, Inc., 281 F.3d 605, 611 (2002), *citing* Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992). There is no evidence in the record of any other employee who is similarly situated to Plaintiff in all relevant respects who was treated differently than he was.

4. Oasis have a legitimate, non-discriminatory reason for terminating Plaintiff

Even if the plaintiff makes a prima facie case, the burden shifts to the defendant to articulate a "legitimate, non-discriminatory reason" for the employment decision. Braithwaite v. Timken Co., 258 F.3d 488, 493 (6th Cir. 2001). To meet this burden, "the defendant must clearly set forth, through the introduction of admissible evidence, the reasons" for its decision. Burdines, 450 US 248, 255. Finally, if the defendant meets is burden of articulation, the burden shifts back to the plaintiff to show that the reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct. Johnson v. Kroger Co., 319 F3d 858, 866 (6th Cir. 2003). Even if Plaintiff could establish a prima facie case of disability discrimination under the ADA, and thus shift the burden to Oasis to articulate a legitimate, non-discriminatory reason for terminating him, he cannot establish that the

11

proffered reason is pretextual.

As discussed above, Plaintiff was terminated because he was not performing his job as required. He acknowledges that he received training on the machinery and had worked a prior season without any issues. At some point, Plaintiff started to stray from the proper application process and this resulted in damages to Oasis' customer. Cooper stated the Steele admitted to not using the machinery as trained. Oasis was able to determine that Plaintiff was solely responsible for the spike in damages. Plaintiff refused to admit to the problem and refused to change his improper practices which resulted in the damages. Plaintiff has no proof to suggest that Oasis' decision to terminate his failure to perform his job properly after receiving training is a pretext for discrimination. It was clearly based in fact, and Plaintiff cannot refute that his poor performance was the motivation for terminating him. Plaintiff was an at-will employee who could be fired for any reason, moreover, his poor work performance was more than sufficient to warrant his termination.

Oasis has articulated a legitimate, non-discriminatory reason for terminating Plaintiff, and he cannot refute it. Oasis are therefore, entitled to summary judgment on Plaintiff's claim.

### B.    Retaliation under ADA and ORC 4112

Plaintiff claims that he was terminated because he requested reasonable accommodations. (Doc. 1 ¶ ¶ 51 and 57). Plaintiff's claim is based merely on the temporal aspect of the request for reasonable accommodation. Plaintiff provided Oasis with a written request for reasonable accommodation on the same day as his termination. Although his request and termination are close in time does not lead to the conclusion that Plaintiff was terminated because of such request. Therefore, his claim of retaliation must fail.

First and of utmost importance, Plaintiff and Oasis have verified that at all times prior

12

to the written request for reasonable accommodation, Plaintiff was receiving the accommodations so requested. Plaintiff requested the following accommodation; implementation of flexible leave, implement flexible time for doctors visits, allow for lunch breaks, allow for breaks for , allow for time and etc. Plaintiff and Oasis agree that Plaintiff was not on a timed schedule and worked on a commission basis. Plaintiff was allowed to manage his own schedule, take time off with medical issues, check his blood sugar, and take breaks as needed. Plaintiff was given an unlimited amount of time to complete his work. Therefore, Oasis would have no reason not to provide Plaintiff such accommodation and had in fact already provided such accommodations. As previously outlined, Oasis had legitimate, non-discriminatory, non-retaliatory reasons to terminate Plaintiff. Plaintiff was not performing his job correctly which resulted in damages to Oasis. Plaintiff had been asked about the problem and refused to correct it. Therefore, Plaintiff's request for reasonable accommodation was not the reason for his termination especially since Plaintiff was already receiving such accommodations.

### C. Defamation per se

To prevail on a defamation claim, plaintiff must show that (1) a false statement of fact was made, (2) the statement was defamatory, (3) the statement was published, (4) plaintiff suffered injury as a proximate result of the publication, and (5) defendant acted with the required degree of fault in publishing the statement. Byrne v. Univ. Hosps., Cuyahoga App. No. 95971, 2011-Ohio-4110, *citing* Pollock v. Rashid (1996), 117 Ohio App.3d 361, 368, 690 N.E.2d 903. The threshold determination of whether the allegedly defamatory statement is one of fact or opinion is a matter of law to be decided by the court. Id. citing Sikora v. Plain Dealer Publishing Co., Cuyahoga App. No. 81465, 2003-Ohio-3218, ¶16. Here, Plaintiff cannot demonstrate all of these elements.

1. Plaintiff cannot demonstrate that Oasis made False Statements

Plaintiff alleges that Oasis made statements to co-workers about him damaging customers' property. (Steele Dep. 30). However, Plaintiff has not provided any other evidence that Oasis actually made those statements. Plaintiff merely alleges that statements were made to co-workers. These mere allegations are not enough to establish that Oasis made the statements. Additionally, even if Oasis did make statements about Steele, the statements were true based upon the undisputed facts. Therefore, Steele cannot establish defamation per se if the statements were true.

2. Plaintiff cannot demonstrate he suffered any injury

Moreover, Plaintiff has not suffered any injury, even if such statements were made. Plaintiff states that no harm has come from these alleged statements. (Steele Dep. p. 31). Steele states that he might be injured in the future but has not demonstrated that the alleged statements have caused any damage to him.

Even if the statements were made, the statements would be protected by a qualified privilege. Cittadini v. Southwest General Health System, 2011-Ohio-6464 *citing* Hahn v. Kotten , 43 Ohio St.2d 237 (1975) . Statements made between two employees of a company are protected by a qualified privilege and not actionable as defamation unless done with actual malice. Id. Plaintiff has failed to show that defendant knew the statements were false or acted with reckless disregard as to whether the statements were false so as to constitute actual malice. In the instant case, there is a qualified privilege defense to Plaintiff's defamation claim.

> A qualified or conditionally privileged communication is one made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a right or duty, if made to a person having a corresponding interest or duty of a privileged occasion and in a manner and under circumstances fairly warranted by the occasion and duty, right or interest. The essential elements thereof are good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only.

Id. *citing* Garofolo v. Fairview Park, Cuyahoga App. Nos. 92283 and 93021, 2009-Ohio-6456. A review of the record demonstrates that the any alleged statements about damages to customers' lawns were between Oasis' employees in furtherance of an internal investigation. As such, the statements were privileged communications. *See* Gintert v. WCI Steel, Inc.*,* 11th Dist. No.2002-T-0124, 2007-Ohio-6737. In addition, statements are not actionable unless done with actual malice. There is no evidence that if any statement were made that such were made with actual malice.

As such, Plaintiff cannot provide his claim of defamation per se and Oasis is entitled to summary judgment.

V. **Conclusion**

Based on the undisputed facts in the record, Plaintiff cannot establish a prima facie case of disability discrimination. Further, Oasis terminated Plaintiff's employment for a legitimate, non-discriminatory reason, and there is no evidence of pre-text. Thus, Plaintiff's claims of disability discrimination must fail as a matter of law. As such, Oasis respectfully requests that this Court grant its motion for summary judgment and dismiss Plaintiff's Complaint in its entirety.

Respectfully Submitted,

/s/Kari Yeomans
Kari Yeomans   0079517
Attorney for Defendant
Caparella-Kraemer & Associates
4841-A Rialto Road
West Chester, Ohio 45069
Phone: (513) 942-7222
Fax: (513) 942-6444
E-Mail: kari@caparellakraemer.com

**CERTIFICATE OF SERVICE**

     This is to confirm that a copy of the foregoing Oasis' Motion for Summary Judgment was electronically filed on December 29, 2011.  Notice of such filing will be sent to all parties listed below by operation of the Court's electronic filing system, and the filing may be accessed through that system.

Randolph H. Freking (0009158)
Katherine Daughtrey Neff (0082245)
Trial Attorneys for Plaintiff
FREKING & BETZ, LLC
525 Vine Street, Sixth Floor
Cincinnati, Ohio 45202
Phone: (513)721-1975/Fax: (513)651-2570
*randy@frekingandbetz.com*
*kneff@frekingandbetz.com*

/s/Kari Yeomans
Kari Yeomans