UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| NATHANIEL STEELE | : | Case No. 1:10-cv-769 |
| | : | Judge Weber |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| OASIS TURF & TREE, INC. | : | |
| | : | |
| and | : | |
| | : | |
| OASIS LAWN LANDSCAPE, INC. | : | |
| | : | |
| Defendants. | : | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**ORAL ARGUMENT REQUESTED**

Katherine Daughtrey Neff (0082245)
Randolph H. Freking (0009158)
Trial Attorneys for Plaintiff
FREKING & BETZ, LLC
525 Vine Street, Sixth Floor
Cincinnati, Ohio 45202
Phone: (513) 721-1975/Fax: (513) 651-2570
kneff@frekingandbetz.com
randy@frekingandbetz.com

I.     **INTRODUCTION**

Defendants Oasis Turf and Tree, Inc. and Oasis Lawn Landscape, Inc. (collectively "Oasis") moved for summary judgment on Plaintiff Nathaniel Steele's claims of disability discrimination, retaliation for engaging in protected activity, and defamation in the termination of his employment. For the reasons that follow, Oasis's Motion is without merit and should be denied.[1]

Steele, who has diabetes, started working for Oasis in February 2008 as a Lawn Care Technician who fertilized lawns. Until the events underlying this litigation, Steele's supervisors never disciplined him for his performance. Instead, Oasis repeatedly rewarded him for his good performance.

In January 2009, Steele was hospitalized for approximately one week due to complications from his diabetes. He missed several days of work in late May and early June 2009 because of his diabetes. On the morning of June 17, 2009, Steele presented Robert Reindl, who co-owned Oasis with his wife Angela Reindl, and Jeff Cooper, Operations Manager, with a written request for accommodations. (Cooper Dep. at 10-11.) Instead of accommodating Steele's diabetes, or even discussing his request for accommodations with him, just hours later, Robert Reindl and Cooper terminated Steele. There is absolutely no documentary evidence to establish, however, that Steele caused any lawn damage, much less $6,000 worth.

Because there are questions of fact regarding whether Oasis discriminated against Steele on the basis of his disability or retaliated against him for engaging in protected activity, summary

---

[1] After the benefit of discovery, Steele does not dispute dismissal of his defamation claim.

judgment on those claims is inappropriate. Steele therefore respectfully requests that this Court deny Oasis's Motion.[2]

## II. FACTS

### A. Steele Met Or Exceeded Oasis's Performance Expectations.

Robert and Angela Reindl own Oasis. (Reindl R. Dep. at 6; Daye Dep. at 7; Reindl A. Dep. at 4, 6.) Oasis hired Steele in July 2008 as a Lawn Care Technician fertilizing lawns, and he started reporting to Cooper in January or February 2009. (Steele Dep. at 9, 10; Cooper Dep. at 11-12.) Technicians are paid on a commission basis unless they are working in the shop where they are paid an hourly basis. (Reindl R. Dep. at 11; Daye Dep. at 30; Coolidge Dep. at 43.)

Steele was given a list each day of lawns to fertilize along with the size of the yard and the amount of fertilizer necessary to apply to the yard. (Reindl R. Dep. at 19; Steele Dep. at 15.) Cooper, Angela Reindl and Heather Daye, Customer Service Supervisor, created routes. (Cooper Dep. at 18; Coolidge Dep. at 15; Daye Dep. at 7.) Steele was not always able to complete his route in a day, either because he ran out of time or could not access areas in need of treatment. (Coolidge Dep. at 16-17; Reindl A. Dep. at 15-16.) Technicians use service calls (where they return to the lawn to complete treatment) to address this absence of access and customer complaints; they do not receive commission for service calls unless the call is for another Technician. (Reindl R. Dep. at 20-21.) At the end of the day, Steele recorded how much fertilizer he used, what properties he completed and his total production. (Steele Dep. at 15; Reindl A. Dep. at 12-13.) He also turned in receipts for the gasoline he used to operate the machines that blew fertilizer from sidewalks and driveways back onto the lawn when he was finished fertilizing. (Steele Aff. ¶ 2.)

---

[2] Steele has not located anywhere on the Docket for this case Defendants' proposed findings of fact or conclusions of law as called for in the Court's scheduling and pre-trial procedure order.

Cooper was responsible for periodic verbal reviews of his subordinates' performance and for communicating any performance concerns to them. (Reindl A. Dep. at 11-12.) Steele never received negative feedback on his performance and never faced any discipline until his termination. (Steele Dep. at 20-21, 22.) Instead, Steele repeatedly received gift cards as bonuses for receiving compliments from customers. (Steele Dep. at 17, 19.)

### B. Steele Was Hospitalized In January 2009 And Missed Several Days In May And June 2009--Just Weeks Before His Termination--Because Of Complications From His Diabetes.

Steele was diagnosed with diabetes when he was 21 years old and he manages it with insulin treatments. (Steele Dep. at 23, 24.) Steele carried insulin needles with him as well as glucose monitoring devices and glucose tablets. (Steele Dep. at 24.) He has to constantly monitor his sugars throughout the day (3 to 5 times during an 8 hour work day). (Steele Dep. at 24, 26.)

Steele notified Oasis of his diabetes on the first day of his training. (Steele Dep. at 40.) In fact, Steele's diabetes and his need for accommodations were well known around Oasis. (Daye Dep. at 18; Reindl R. Dep. at 24-25; Cooper Dep. at 22, 23; Coolidge Dep. at 24; *see also*, Reindl A. Dep. at 20.)

In January 2009, Steel was hospitalized for approximately one week due to complications with diabetes. (Steele Dep. at 27-28.) In late May and early June 2009, Steel missed several days of work due to his diabetes. (Steele Dep. at 24-25; Reindl A. Dep. at 20; Cooper Dep. at 24; Daye Dep. Ex. 2.) Upon his return, Oasis altered Steele's work route so that he spent more time driving and on service calls and less time earning commission. (Steele Dep. at 31, 32-33, 34; *see also*, Reindl A. Dep. at 28.)

### C. Oasis Terminated Steele Immediately After He Requested An Accommodation.

On June 17, 2009, Steele submitted to Cooper a request for a reasonable accommodation in writing which included, *inter alia*, a request for time off as necessary for recuperation, health problems or training on managing diabetes. (Steele Dep. at 38-39; Reindl R. Dep. at 32-33; Reindl R. Dep. Ex. 4.)

Later that same day, Robert Reindl and Cooper told Steele he had damaged a number of lawns and that he was required to pay for 50% of the alleged damage to the lawns or be terminated. (Cooper Dep. at 45-46; Steele Dep. at 22, 37-38; Reindl R. Dep. at 39, 42, 44-45; Reindl A. Dep. at 40-41, 50; Reindl A. Dep. Ex. 1.) The damage allegedly occurred in the days between May 15, 2009 and June 4, 2009. (Daye Dep. Ex. 1.) Steele asked to see the policy that provided for automatic termination unless he paid up, but Robert Reindl could not find the policy in Steele's copy of the employee handbook. (Steele Dep. at 22-23, 38.) Angela Reindl admits that Oasis's alleged policy requiring Technicians to pay for repairs was not in the copy of the handbook Steele received. (Reindl A. Dep. at 53.)

When Steele refused to give Oasis $3,000, Cooper and Reindl told him he was terminated. (Steele Dep. at 22-23, 38.) Steele was never shown any of the damages or given any explanation of what had happened to the lawns. (Steele Dep. at 38.) Nor was he given an opportunity to repair the lawns he had allegedly damaged. (Cooper Dep. at 52; Reindl R. Dep. at 60-61)

Benjamin Gulleman, who has no known disability, took over Steele's van staring July 21, 2009. (Reindl A. Dep. Ex. 2 at 10; Reindl A. Dep. at 68-69.)

### III. ARGUMENT

#### A. Summary Judgment Standard.

Summary judgment may only be granted if there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. As the party moving for summary judgment, Oasis bears the burden of showing the absence of a genuine issue of material fact as to at least one element of Steele's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If Oasis meets the burden, Steele must then present evidence that reveals a genuine issue for trial. *Id.*

#### B. Oasis Retaliated Against Steele In Violation Of The ADA.

Retaliating against an employee because he engaged in protected activity is expressly prohibited by the ADA and O.R.C. 4112.02 (I). The elements of a claim for retaliation are: (1) that plaintiff engaged in protected activity; (2) that his exercise of his civil rights was known to the defendant; (3) that he was the subject of adverse employment action; and (4) that a causal link existed between the protected activity and the adverse action. *Walborn v. Erie County Care Facility*, 150 F.3d 584, 588-89 (6th Cir. 1998). This burden of proof presents a "low hurdle" to Steele. *Gribcheck v. Runyon*, 245 F.3d 547, 551 (6th Cir. 2001) (retaliation claim under the Rehabilitation Act); *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997).

To establish the causal connection required in the fourth element, Steele must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had he not engaged in protected activity. *Avery Dennison*, 104 F.3d at 861; *Jackson v. RKO Bottlers*, 743 F.2d 370, 377 (6th Cir. 1984). Although no one factor is dispositive in establishing a causal connection, evidence that Oasis treated Steele differently from similarly situated employees or that the adverse action was taken shortly after Steele's exercise of protected rights is relevant to causation. *Gribcheck*, 245 F.3d 547, 551 (6th Cir. 2001), *citing*

*Wrenn v. Gould*, 808 F.2d at 493, 501 (6th Cir. 1987); *Moon v. Transport Drivers, Inc.*, 836 F.2d 226, 230 (6th Cir. 1987).

Oasis only disputes the causal connection between Steele's protected activity and his termination. (Def. MSJ at 12-13.) The Sixth Circuit has recognized that "there may be circumstances where evidence of temporal proximity alone would be sufficient to support that inference." *Nguyen v. City of Cleveland*, 229 F.3d 559, 567 (6th Cir. 2000). When "the protected activity and the adverse employment action is [like here] acutely near in time, that close proximity is deemed indirect evidence such as to permit an inference of retaliation to arise." *DiCarlo v. Potter*, 358 F.3d 408, 421 (6th Cir. 2004). Here, Steele established that within two weeks of his absence from work due to his diabetes, and on the same day that he requested accommodations in writing for his disability, Oasis terminated him.

Oasis cannot escape this potent evidence of a causal connection between Steele's protected activity and his termination by relying on the inference it asks this Court to make in its favor (that is, because it allegedly had already been accommodating Steele's diabetes it would not terminate him for putting his request in writing). (Def. MSJ at 12-13.) This Court, instead, must draw all inferences in Steele's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *DePiero v. City of Macedonia*, 180 F.3d 770, 776 (6th Cir. 1999). It is undisputed that Steele took time off of work due to his diabetes during the busiest time of year for Oasis, when Oasis disciplined employees for missing work; indeed Cooper placed a written warning in Steele's file when he took a Saturday off in May 2009. (Reindl, R. Dep. Exs. 1, 2; Steele Dep. Ex. 6.) Steele asked in his accommodation request for more time off as necessary. (Reindl, R. Dep. Ex. 4.) Moreover, the one accommodation Oasis allegedly afforded to Steele -- time for breaks on his route -- did not cost it any money or cause it inconvenience as Steele was working on a commission basis. A jury could consider this evidence and conclude that Oasis decided to

6

terminate Steele only when his accommodation made necessary the kind of "affirmative conduct" on its part required by federal and Ohio law prohibiting discrimination.

Moreover, a jury could consider Steele's evidence of pretext when determining whether a causal connection existed between Steele's protected activity and his termination.  *Pettit v. Steppingstone Center for the Potentially Gifted*, 429 Fed. Appx. 524, 536 (6th Cir. 2011) (where the Sixth Circuit recognized "the appropriateness" of plaintiff's presentation of overlapping evidence in support of both the causal connection element of the *prima facie* case and the pretext stage.)

      **C.**    **Steele Can Establish That Oasis Discriminated Against Him On The Basis Of His Disability.**

Federal and state law prohibit discrimination against employees on the basis of a disability.  Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12111; O.R.C. §4112.02(A).  For example, the ADA makes it unlawful for an employer to limit, segregate, or classify an employee in a way that adversely affects the opportunities or status of the individual because of his disability, to deny equal job opportunities or benefits, or to fail to make reasonable accommodations to an employee with a disability.  42 U.S.C. §12112(a).

"The thesis of the [ADA] is simply this: That people with disabilities ought to be judged on the basis of their abilities; they should not be judged nor discriminated against based on unfounded fear, prejudice, ignorance, or mythologies; people ought to be judged on the relevant medical evidence and the abilities they have." *Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir. 1998) (citations omitted).  "The statute seeks to diminish or to eliminate the stereotypical thought processes, the thoughtless actions, and the hostile reactions that far too often bar those with disabilities from participating fully in the Nation's life, including the workplace." *U.S. Airways v. Barnett*, 535 U.S. 391, 401 (2002).  The ADA thus serves to "prohibit employers from making adverse employment decisions based on stereotypes and generalizations associated with

7

the individual's disability rather than on the individual's actual characteristics." *EEOC v. Prevo's Family Mkt., Inc.*, 135 F.3d 1089, 1097 (6th Cir. 1998). This objective "will sometimes require affirmative conduct to promote entry of disabled people into the workforce." *Barnett*, 535 U.S. at 401.

When alleging disability discrimination based upon indirect evidence of discriminatory motive, Steele may establish a *prima facie* case by demonstrating that:

1) he is an individual with a disability;

2) he is "otherwise qualified" for the position, with or without reasonable accommodation;

3) he suffered an adverse employment action;

4) the employer knew or had reason to know of his disability; and

5) after termination, the position remained open, or the employee was replaced by a non-disabled employee.

*Hopkins v. Electronic Data Sys. Corp.*, 196 F.3d 655, 660 (6th Cir. 1999); *Ohio Civil Rights Commission v. Ingram*, 69 Ohio St.3d 89, 92 (1994) (Ohio courts apply federal law on state discrimination claims).

Oasis claims that Steele cannot establish that he was qualified for his position or that he was replaced by a non-disabled individual. (Def. MSJ at 8-11.) Oasis is wrong on both the facts and law.[3]

### 1. Steele Was Qualified For His Position.

First, Oasis admitted in response to Steele's Interrogatories that he possessed qualifications for the Lawn Care Technician position while he held it. (Reindl, A. Dep. Ex. 2 at 9-10.) A jury could also consider Steele's experience working for a landscaping company before

---

[3]Oasis is also wrong that the basis of Steele's disparate treatment discrimination claim is the failure to accommodate. (Def. MSJ at 8.) The basis of this claim is his termination.

8

working for Oasis and Angela Reindl's admission that Steele met performance expectations. (Steele Resume, attached as Pl. Ex. A; Reindl A. Dep. at 72.) Thus, Oasis's argument at summary judgment that Steele was unqualified for his position fails on the facts.

It also fails on the law. Oasis's reliance on the claim that Steele was not performing his duties in June 2009 is misplaced. (Def. MSJ at 8-9.) Under the ADA, a "qualified individual with a disability" is an individual who, with or without reasonable accommodation, *can* perform the essential functions of the job at issue. 42 U.S.C. § 12111(8). *See also* O.A.C. § 4112-5-08(D)(4)(c). Steele clearly demonstrated that he can perform the essential functions of the Lawn Care Technician position as he had been doing so for an entire year.

Moreover, as the Sixth Circuit has made clear in analogous cases involving age and gender discrimination, in order to establish the second element of his *prima facie* case, Steele need only demonstrate that he was objectively qualified for the position. *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 574-76 (6th Cir. 2003) (*en banc*); *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660 (6th Cir. 1999). In both *Wexler* and *Cline*, the Sixth Circuit held that while analyzing a *prima facie* case of discrimination, courts are not to use the defendant's articulated nondiscriminatory reason for termination to assess whether the plaintiff was qualified for the position. *Wexler*, 317 F.3d at 574; *Cline*, 206 F.3d at 660-61. This approach would impermissibly conflate the distinct stages of the *McDonnell Douglas* analysis, and set the *prima facie* burden too high. *Cline*, 206 F.3d at 660-61.

Instead, courts must analyze the qualifications of the plaintiff *independent* of the defendant's nondiscriminatory reason for termination. *Wexler*, 317 F.3d at 574-75; *Cline*, 206 F.3d at 660-61. In other words, this Court must evaluate Steele's qualifications and performance *before* the events that prompted his discharge. *Cline*, 206 F.3d at 662-63. Thus, Steele's qualifications must be evaluated *objectively*, by determining whether he presented evidence that

9

he met at least the minimum objective criteria required for employment in his field. *Wexler*, 317 F.3d at 575-76. This inquiry should focus on Steele's education, experience in the relevant industry, and demonstrated possession of the required general skills. *Id.* at 576.

Therefore, Oasis's argument that Steele is not qualified because of his alleged poor performance is fatally flawed. This is Oasis's articulated non-discriminatory reason for terminating Steele, which must be analyzed in the third, or pretext, stage of the *McDonnell Douglas* process, not the *prima facie* case. *Wexler*, 317 F.3d at 574-75; *Cline*, 206 F.3d at 660-61.

### 2. Oasis Replaced Steele.

A person is "replaced" when another employee is hired or reassigned to perform the plaintiff's duties. *Barnes v. GenCorp, Inc.*, 896 F.2d 1457, 1465 (6th Cir 1990), cert. denied, 498 U.S. 878 (1990). Oasis claims that no employees constituted legal replacements for Steele and that he cannot establish the last element of his *prima facie* case. (Def. MSJ at 10-11.) However, the *McDonnell Douglas* test is not to be applied mechanically, but on a case-by-case basis. *Barnes*, 896 F.2d at 1465 n9. Further, an employer may not avoid liability by making minor changes to the job, *id.* at 1465 n.10, especially if those changes are evolutionary changes that would have occurred even if the plaintiff were still employed in the position. *Irvin v. U.S. Security Assoc. Inc.*, Case No. C-1-01-379, Report and Recommendation at 5 (S.D. Ohio, Sept. 20, 2002) (Mag. J. Sherman), *adopted by* Case No. C-1-01-379, Order at 14 (S.D. Ohio, Nov. 27, 2002) (J. Spiegel) (copies attached). *See also*, *Andwan v HAMBUCO Federal Credit Union*, Case No. CV01 05 1069, Decision and Entry Denying Defendant's Motion for Summary Judgment at 11 (Butler County Comm Pleas, Mar. 13, 2003) (J. Oney) (where termination not result of reduction in force and duties and organization quite fluid, employer not permitted to evade discrimination claim by redistributing duties) (copy attached as Pl. Ex. B.)

Moreover, Steele is not required to show that he was *immediately* replaced by an employee from outside the protected class. *See Morvay v. Maghielse Tool & Die Co.*, 708 F.2d 229, 233 (6th Cir.), cert. denied, 464 U.S. 1001 (1983) (to establish the last element of a *prima facie* case, a plaintiff may demonstrate that the employer continued to solicit applications for the vacant position after the plaintiff was terminated).

Here, in response to Steele's interrogatories, Oasis identified one person, Gulleman, as performing Steele's duties after his termination. (Reindl Dep. Ex. 2 at 10.) In light of this clear admission that Steele was replaced by a non-disabled individual, Oasis's reliance on Angela Reindl's testimony to establish the opposite is misplaced. (Def. MSJ at 11.)

When faced with the interrogatory responses regarding replacement, Angela Reindl offered the following testimony:

> Q. [Gulleman is] the only person listed [on Oasis's Answers To Plaintiff's Interrogatories]. Is it your belief that Ben was hired to replace Nate?
>
> A. No.
>
> Q. Was anyone hired to replace Nate?
>
> A. No.
>
> Q. Do you know why he's listed as an individual whose performed Nate's job responsibilities? . . .
>
> A. Okay, *because of the month delay* that was what drove my answer no, because I guess *Ben probably took over Nate's van*.

(Reindl A. Dep. at 68-69.) Angela Reindl's admission that Gulleman took over Steele's van and that she concluded that Gulleman did not replace Steele only because he was not hired immediately after Steele's termination is fatal to Oasis's argument that Steele was not replaced. Nor can Oasis rely on the claim that Gulleman did not drive the same route as Steele to demonstrate as a matter of law that he did not replace Steele. It is clear from Daye's testimony that routes assigned to Lawn Care Technicians changed daily depending on the needs of the

11

customers. (Daye Dep. at 12-15.) Oasis cannot rely on the fluidity of the routes it assigned its Lawn Care Technicians to protect it from discrimination claims.

Additionally, as discussed *infra* in Section III.D.2, Steele has raised a genuine issue of fact regarding whether similarly situated, non-disabled individuals were treated more favorably than him which also satisfies the fourth prong of the *prima facie* case of disparate treatment disability discrimination.

### D. Oasis's Articulated Reason Is Pretext For Discrimination.

Because Steele succeeded in proving a *prima facie* case for both his claims, Oasis must present some legitimate, nondiscriminatory reason for the termination. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993); *Hopkins*, 196 F.3d at 660. Once Oasis meets this burden of production, Steele must then show that Oasis's articulated reason for the termination is a pretext for age discrimination. *Hicks*, 509 U.S. at 507; *Hopkins*, 196 F.3d at 660. In *Hicks*, the Court stated:

> The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will *permit* the trier of fact to infer the ultimate fact of intentional discrimination, and the Court of Appeals was correct when it noted that, upon such rejection, [n]o additional proof of discrimination is required.

Id. at 511 (emphasis in original; footnote and citation omitted). Thus, the employee need not produce *additional* evidence of discrimination. As the Supreme Court clarified in *Reeves v. Sanderson Plumbing*, 530 U.S. 133, 149 (2000), a plaintiff's *prima facie* case combined with sufficient evidence to find that the employer's asserted justification lacks credibility will permit the trier of fact to infer that the employer was motivated by unlawful discrimination. In *Reeves*, the Supreme Court unanimously and authoritatively rejected the pretext-plus approach that several circuits had used previously in ruling on motions for summary judgment. *Id.* at 140-41.

12

The Court held that the Fifth Circuit had "erred in proceeding from the premise that a plaintiff must always introduce additional, independent evidence of discrimination." *Id*. at 149. Because Steele has established a *prima facie* case of disability discrimination, the burden shifts to Oasis to articulate a legitimate, non-discriminatory reason for the termination decision.

To establish that the defendant's explanation for the termination is unworthy of belief, Steele may show that "(1) the proffered reasons had no basis in fact, (2) the proffered reasons did not actually motivate his discharge, or (3) they were insufficient to motivate discharge." *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994). The first type of proof requires that the plaintiff show that the bases for the termination never happened or are factually false. *Id.* The second type of proof consists of a demonstration that "an illegal motivation was more likely than [the reasons] offered by the defendant." *Id.* The third type of proof consists of evidence that other non-disabled employees otherwise similarly situated to the plaintiff were not terminated. *Id.*

Oasis claims it terminated Steele because he allegedly would not take responsibility for deliberately causing $6,000 worth of damage to customers' lawns. (Def. MSJ at 5-6; Reindl R. Dep. at 43-44, 47.) In contrast, Cooper claims he decided Steele should be terminated because of damage Steele allegedly caused to a newly renovated section of a customer's lawn which Cooper learned about on the day Steele was terminated. (Cooper Dep. at 26-27, 28, 45, 50.) A jury, however, does not have to accept Oasis's word that Steele deliberately caused any damage, much less $6,000 worth. Moreover, a jury could reject as pretext Oasis's claim that it would not have terminated Steele if he had only paid it $3,000.

### 1. Oasis's Reason Has No Basis In Fact.

A jury does not have to believe that Steele deliberately caused $6,000 worth of damage (or, for that matter, any damage) to customer lawns. There is simply no documentary evidence to

establish the extent of any damage or that Steele deliberately damaged property in an attempt to shirk his duties. Cooper claims that Steele manipulated his machine to avoid throwing fertilizer on sidewalks and driveways and speed up cleaning times. (Def. MSJ at 5; Cooper Dep. at 47-48.) He also claims in a disciplinary document unsigned by Steele that Steele "confessed" to doing so. (Steele Dep. Ex. 6.) But Steele flatly denies manipulating the machine, telling Cooper that he did, or seeing the disciplinary document before his termination. (Steele Aff. ¶ 3; Steele Dep. at 21-22.) Angela Reindl also claims that Steele would have had to turn the dial of the fertilizer machine to have done the damage. (Reindl A. Dep. at 59-60.) But she had no idea if anyone at Oasis examined Steele's machine to see if the dial had been moved. (Reindl A. Dep. at 60.) And Cooper admits he did not inspect Steele's machine between May 29, 2009 and June 17, 2009. (Cooper Dep. at 67.) Nor did anyone at Oasis review Steele's gasoline receipts which demonstrated that Steele's use of gasoline in the blower used to clean up sidewalks and driveways in late May/early June 2009 was consistent with his use of gasoline in the past. (Steele Aff. ¶ 4.)

    Nobody at Oasis bothered gathering any photographic evidence either. Coolidge, whom Oasis allegedly sent to repair the damage, took only one picture on a cell phone and even that alleged picture was erased. (Coolidge Dep. at 26-27, 51.) Neither Cooper nor Robert Reindl, the two termination decision makers, took any pictures. (Reindl R. Dep. at 45; Cooper Dep. at 52.) In fact, Robert Reindl and Copper did not have any documentation of the alleged damage to customers' lawns. (Reindl R. Dep. 51.) And Cooper could not recall the name, address or even neighborhood of the customer whose renovated yard Steele allegedly damaged (which was Cooper's alleged reason for his decision to terminate Steele). (Cooper Dep. at 27-28.)

    Steele anticipates that Oasis will claim in its Reply In Support Of Summary Judgment that the spreadsheet Daye drafted of the customer complaints Oasis allegedly received is

sufficient to demonstrate that Steele deliberately caused $6,000 of property damage.  (Daye Dep. Ex. 1.)  But this spreadsheet includes multiple errors and a jury could reject it as proof of property damage. For instance, the spreadsheet reflects that Cooper completed a service call for a customer on June 1, 2009 when the customer did not call to complain until June 8, 2009, which Cooper admits is a clear error.  (Daye Dep. Ex. 1; Cooper Dep. at 36-37.)  The spreadsheet likewise reflected that another customer received a service call on June 1, 2009, three days before calling to complain.  (Daye Dep. Ex. 1; Cooper Dep. at 38.)  Cooper admits there is at least one other similar error regarding dates of service calls and complaints.  (Cooper Dep. at 40-41.)

A jury could also consider the "estimates" of the damage Steele allegedly caused as without any factual basis and falsely inflated to manufacture support for Steele's termination.  At summary judgment, Oasis claims that Steele damaged approximately 15 lawns.  (Def. MSJ at 5.) Daye claims that she received approximately 20 complaints about Steele's work.  (Daye Dep. at 19-20.)  According to Robert Reindl, there were "dozens" of lawns Steele burnt.  (Reindl R. Dep. at 41.)   The spreadsheet listing all the allegedly affected properties listed approximately 27 customers.  (Daye Dep. Ex. 1; Reindl A. Dep. at 61.)  In contrast, Angela Reindl claims that Steele caused $150 to $200 worth of damage to 30 to 35 properties but at Steele's unemployment hearing she and Cooper inflated the number even more to claim that Steele damaged more than 50 client properties.  (Cooper Dep. at 56; Reindl A. Dep. at 42-43, 62.)

The estimates of the cost to Oasis for the repairs is likewise without basis.  Oasis claimed that Steele did almost $6,000 worth of damage in terms of materials and labor.  (Reindl R. Dep. at 54-55; Reindl A. Dep. at 41.)  But decision maker Robert Reindl did not know who did the repair work, or how much Oasis had to pay for sod.  (Reindl R. Dep. at 54-55.)  And he admits there were no documents that showed the exact amount of damage allegedly done by Steele. (Reindl R. Dep. at 55.)  Angela Reindl asserted that she came up with the $6,000 figure based on

the cost of seed, mulch and sod to make the repair. (Reindl A. Dep. at 41.) But Angela Reindl did not keep any documents to show how she calculated it. (Reindl A. Dep. at 42.) Decision maker Cooper could not explain where the $6,000 figure came from either. (Cooper Dep. at 57.)

The absence of any documentary evidence along with these clear disputes in the testimony precludes summary judgment.

### 2. Oasis's Reason Was Insufficient To Motivate Termination And/Or Did Not Actually Motivate Termination.

Steele has also established a clear jury question regarding whether Oasis's articulated reason actually motivated the termination decision. As this Court recently emphasized, pretext

> 'is a common sense inquiry: did the employer fire the employee for the stated reason or not? This requires a court to ask whether the plaintiff has produced evidence that casts doubt on the employer's explanation, and, if so, how strong it is.' At base, then, the *Manzer* test can be distilled to one simple requirement here: Plaintiff must produce sufficient evidence such that a reasonable jury could doubt [Defendants'] stated reasons for its actions."

*McCart v. University of Cincinnati Foundation,* 2010 U.S. Dist. LEXIS 34406, *1, *20-*21 (J. Spiegel), citing *Chen v. Dow Chem. Co.*, 580 F.3d 400, n. 4 (6th Cir. 2009).

According to Oasis, if only Steele had been willing to "take responsibility" for the damage he had done, he would not have been terminated. But it is undisputed that Robert Reindl and Cooper did not give Steele the opportunity to repair any alleged damage. (Cooper Dep. at 52; Reindl R. Dep. at 60-61.) Instead, they wanted Steele to pay Oasis $3,000 without showing him any evidence to support their claim that he caused $6,000 of damage. (Reindl A. Dep. at 59.) A jury could thus conclude that an alleged failure to "accept responsibility" was not the real reason for Steele's termination.

This conclusion is reinforced by Oasis's failure to give any warning to Steele that he was damaging lawns and the decision to allow him to continue fertilizing lawns despite the multiple service calls Cooper had allegedly made. According to Cooper, he handled approximately 15

16

service calls between May 29 and June 4 allegedly to address damage to Steele's customers' lawns. (Daye Dep. Ex. 1; Cooper Dep. at 43.)  But during this time, Oasis continued to allow Steele to service customers. (Cooper Dep. at 43, 45.)  In fact, nobody even told Steele during this time period that he had received customer complaints. (Steele Aff. ¶ 5; Reindl A. Dep. at 81.)  Indeed, even after the morning meeting on June 17, 2009, Robert Reindl and Cooper allowed Steele to continue working and service customer lawns. (Reindl R. Dep. at 43.)

      The suspicious timing discussed *supra* in Section III.B likewise allows a jury to conclude that some reason other than the damage to the lawns or Steele's alleged refusal to take responsibility motivated the termination decision.  Indeed the Sixth Circuit has held that suspicious timing is strong evidence of pretext when it is coupled (as it is here) with other independent evidence of pretext.  *Bell v. Prefix, Inc.*, 321 Fed. Appx. 423, 431 (6th Cir. 2009) (unpublished).

      Finally, considering Oasis's admissions that other Technicians caused lawn damage but were neither required to pay for the damage nor fired, a jury could conclude that Oasis's articulated reason was insufficient to motivate the termination decision.  Coolidge admits that he had previously seen damage similar to any he repaired on Steele's customers' lawns. (Coolidge Dep. at 52.)  Coolidge also admits that he has been on service calls to repair damage done by "just about everybody." (Coolidge Dep. at 24.)  And Robert Reindl admits that all technicians had at some point done damage to some properties and that Oasis had to resolve claims due to damage done by Lawn Care Technicians other than Steele. (Reindl R. Dep. at 53, 54.)  Moreover, when Coolidge damaged lawns, he did not have to pay Oasis for any of the damage, instead (unlike its handling of Steele's situation) Oasis afforded him the opportunity to make repairs. (Coolidge Dep. at 22-23.)  In fact, Coolidge, the most tenured Technician, was unaware of any other Technicians terminated for damage to a customer's lawn. (Coolidge Dep. at 8, 42,

54.) And he was unaware of any Technicians having to pay for lawn damage. (Coolidge Dep. at 57.)

Because Steele has demonstrated a question as to the factual basis of Oasis's articulated reason and has adduced evidence allowing a jury to conclude that the articulated reason was not the real reason or insufficient to motivate termination, summary judgment is inappropriate.

IV. **CONCLUSION**

For the foregoing reasons, Oasis is not entitled to summary judgment and Steele respectfully requests that this Court deny Oasis's Motion For Summary Judgement.

Respectfully submitted,

/s/ Katherine Daughtrey Neff
Katherine Daughtrey Neff (0082245)
Randolph H. Freking (0009158)
Trial Attorneys for Plaintiff
FREKING & BETZ, LLC
525 Vine Street, Sixth Floor
Cincinnati, Ohio 45202
Phone: (513) 721-1975/Fax: (513) 651-2570
kneff@frekingandbetz.com
randy@frekingandbetz.com

**CERTIFICATE OF SERVICE**

I hereby certify that on January 30, 2012, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system and copies will be mailed via U.S. mail, e-mail and/or facsimile to those parties who are not served via the Court's electronic filing system. Parties may access this filing through the Court's System.

/s/ Ann Koize Wittenauer