UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

NATHANIEL STEELE,

                  Plaintiff

        v.                                   Case No. 1:10-cv-769-HJW

OASIS TURF & TREE, INC., et al.,

                  Defendants

## ORDER

      This matter is before the Court upon the defendants' "Motion for Summary Judgment" (doc. no. 10), which plaintiff opposes.[1]  Defendant has filed proposed findings of fact and conclusions of law, which plaintiff has highlighted as true, false, or irrelevant (doc. no. 17).  Having considered the entire record, including the pleadings, briefs, exhibits, depositions,[2] and applicable authority, the Court will grant the motion for the following reasons:

## I.  Facts and Procedural History

      Defendant Oasis is a lawn care business located in Loveland, Ohio, with approximately 22 employees.  Oasis is owned by Angela and Rob Reindl (Daye Dep.

---

[1]The complaint names two defendants – Oasis Turf & Tree, Inc. and Oasis Lawn Landscape, Inc. For simplicity sake, the Court will refer collectively to them as "defendant" or "Oasis."

[2]Six depositions have been filed in the record (doc. nos. 10-1 to 10-6), specifically the depositions of Rob Reidel (Co-Owner of Oasis), Jeff Cooper (Operations Manager), Robert Hes Coolidge (Senior Fertilizer Technician), Angela Reindl (Co-Owner/Vice-President/Controller), Heather Daye (Customer Service Manager), and Nathaniel Steele (former Lawn Technician/plaintiff).

at 7). Oasis services residential properties in the Cincinnati area and provides lawn fertilization, tree and shrub care fertilization, various treatments for trees and shrubs, and perimeter pest control. Oasis hired Nathaniel Steele ("plaintiff") as an at-will employee to work as a seasonal "lawn technician" fertilizing lawns beginning in June of 2008. Oasis indicates that its lawn technicians are trained to use the necessary machinery under the "Ohio Safety Training Guide for Trained Servicepersons." Plaintiff acknowledges he received such training (Steele Dep. at 12 "the supervisor . . . showed me how to operate the machine;" at 15-16, printed training form signed by plaintiff).   All of Oasis' lawn technicians work on commission, do not have set hours, and may work at their own pace (R.Reindl Dep. at 36).  This work is seasonal and runs from  late February to early December.

Plaintiff indicates he has "diabetes mellitus type 1" and requires insulin injections.  Plaintiff completed the 2008 season without any issues and without requesting any accommodations. He began working for Oasis for a second season in 2009.  In late May 2009, Oasis began receiving numerous complaints from customers about fertilizer "burns" on their lawns.  After a large spike in the number of customer complaints, Oasis investigated the problem and determined that Steele was the lawn technician responsible for <u>all</u> of the "burned" lawns.  Oasis initially learned that at least 15 lawns – all serviced by Steele –  had been damaged.  As more customers called to complain, Oasis learned that possibly as many as 35 lawns had been damaged by Steele between May 15 and June 4, 2009 (A. Reindl Dep. at 80).

Plaintiff's supervisor, Jeff Cooper ("Cooper"), was the Operations Manager for

Oasis. He made service calls to the damaged properties and observed that the damage was occurring where the sidewalk met the driveway, the driveway met the curb, or in the corners where the machines would be turned. This indicated to Cooper that the damage did not result from mechanical malfunction, but rather, from plaintiff's misuse of the equipment (Cooper Dep. at 20 indicating the machines were cleaned and tested before the technicians took them out; at 29 "what I found showed me that [it] was fertilizer burn by misuse of the equipment").

With respect to the equipment, Rob Reindl explains that "on a Z-spray, that impeller is turned by an electric motor . . . and the speed of that is adjusted by a rheostat, and the guys don't ever change that setting, they set it at that speed and that's where it should be all day every day" (R.Reindl Dep. at 50-51). All the lawn technicians, including plaintiff, were specifically trained not to change the speed of the Z-spray equipment (Id.). Rob Reindl and Jeff Cooper suspected that plaintiff was "turning down the speed of the impeller so that he didn't have to blow off the driveways and sidewalks, and that was causing more fertilizer to be dropped in a concentrated area and burning the lawn" (R.Reindl Dep. at 46; Cooper Dep. at 47-48 "[plaintiff] was turning down the dial; the spinner speed, which affects how far the fertilizer gets thrown. . . to avoid having to use a blower to clean up, thus speeding up his time on a property"). In other words, plaintiff was taking a "short cut" by impermissibly adjusting the speed on his machine in order to avoid certain tasks and finish more quickly.

Cooper indicated he had to make over thirty service calls to reseed, re-sod,

or otherwise repair the lawns damaged by Steele (doc. no. 10-2 at 15, List of Service Calls;  R. Reindl Dep. at 41 "there were dozens of properties that had burnt lawns"). Cooper spoke with Steele about the problem with the "fertilizer burns" (Cooper Dep. at 31). On June 16, 2009, he wrote an "Employee Action Slip" documenting these conversations (doc. no. 10-1 at 28 indicating "I had a meeting with Nate Steele regarding negligence on a Fertilizer Machine resulting in over 30 service calls"). According to Cooper, plaintiff acknowledged that he had not been operating the machine as instructed (Id.;  Cooper Dep. at 47;  A. Reindl Dep. at 59 "you have to physically turn a dial to create what he [Steele] created").  Cooper advised plaintiff that it had been necessary to repair the damaged lawns, but plaintiff became angry and "threatened to turn this around on me" (doc. no. 10-1 at 28).

The next day, on June 17, 2009, plaintiff gave Cooper a letter requesting "accommodations," including flexible time off for medical treatment and doctor visits, and for breaks to eat, drink, take medication, and rest until his blood sugar became normal.  Cooper indicated he had "no problem" with those requests, as plaintiff was already able to do all of them (Cooper Dep. at 26 "the guys understand that they can do as they please throughout their entire day;" at 62-63  indicating he had "no problem" with the requested accommodations).  Plaintiff acknowledges that he could eat, drink, and take breaks as needed on the job, monitor his blood sugar level throughout the day, and take any needed insulin shots (Steele Dep. at 24, 41; see also, R.Reindl Dep. at 38, indicating that plaintiff could take a lunch break and check his diabetes).  In addition, Oasis let plaintiff use paid vacation time when he

needed to take off three days for illness in late May/early June of 2009, as he had used up his sick days (A.Reindl Dep. at 21).  Oasis also let Steele to use an Oasis van to go to any medical appointments during the work day (Id. at 22-23).  Oasis points out that it had provided other employees with reasonable accommodations when needed (A.Reindl Dep. at 33-37;  R.Reindl Deposition, Ex. 4).

Later that same day, Cooper performed a service call on another property serviced by Steele (Cooper Dep. at 26-27).  He observed that Steele had "rolled through an area that a customer had renovated, essentially chewed it up. . . . and . . . took the machine straight through the area" (Id.).  In other words, plaintiff drove his machine right through a newly seeded area (Id. at 27, 45 indicating that this showed "blatant disregard" for the customer's property and that "I realized [plaintiff] couldn't be trusted any more").  Oasis lost this long-time customer due to plaintiff's actions (Id. at 27 Cooper indicating "All I could do was apologize [to the customer]. They were done with us").

Later that day, Rob Reindl and Jeff Cooper met with Steele, who denied responsibility for the lawn damage.  Plaintiff alleges that he was told he had cost the company over $6,000 in costs of repairing the damages to customers' lawns and that if he would acknowledge his actions and cover half of this cost, they would not fire him.  Plaintiff refused.  He argues that there is no "50% policy" in his 2008 copy of the employee handbook.[3]  Since Steel would not admit any responsibility for causing

---

[3]At deposition, plaintiff indicated he had "quit" his job, but later indicated that "I wasn't going to be held responsible for what so-called damages were, and they told me I was fired" (Steele Dep. at 23).

the damage, they determined that he would continue to damage customers' lawns and decided to fire him. When plaintiff became belligerent, he was asked to leave the premises (A.Reindl at 31-32).

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on August 14, 2009. He received a Notice of Right to Sue on February 17, 2010, and within 90 days, the parties entered into a "Tolling Agreement" on May 7, 2010 (doc. no. 1-1 at 2-3).[4] On November 4, 2010, plaintiff filed a five-count federal complaint, alleging disability discrimination under the Americans with Disabilities Act ("ADA") and Ohio R.C. § 4112, retaliation under those statutes, and "defamation per se" under Ohio common law. After the conclusion of discovery, Oasis moved for summary judgment on all claims. This matter is fully briefed and ripe for consideration.

## II. Issues Presented

In determining whether genuine disputes of material fact exist for trial, the Court must determine: 1) whether plaintiff has made out a prima facie case of "disability discrimination" or "retaliation" (under the ADA or Ohio law); 2) If so, whether the defendant has articulated legitimate non-discriminatory reasons for its decision to terminate the plaintiff's employment, and 3) in turn, whether plaintiff has

---

[4]The ADA requires a plaintiff to exhaust administrative remedies by filing a charge with the EEOC and receiving a right-to-sue letter. 42 U.S.C. § 12117(a). The subsequent 90-day period for filing a federal complaint is not jurisdictional, but rather, a timing requirement subject to waiver, estoppel, and equitable tolling. Truitt v. Cty. of Wayne, 148 F.3d 644, 646-47 (6th Cir. 1998). The parties do not dispute any timeliness issues.

set forth sufficient evidence to create a genuine dispute as to whether such reasons were pretextual. Also at issue is whether there are any genuine disputes of material fact regarding plaintiff's claim of "defamation per se."

## III. Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil provides in relevant part that:

> A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a).

Under Rule 56, the moving party bears the burden of proving that no genuine dispute of material fact exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (l986). The court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. Id. at 587. The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). A genuine dispute exists "only when there is sufficient evidence on which the jury could reasonably find for the plaintiff." Id. at 252. On summary judgment review, the court's role is not to "weigh the evidence and determine the truth of the matter," but rather, to determine whether there are any genuine disputes of material fact for trial. Id. at 249. The United States Supreme Court has observed that the main purpose of the summary judgment rule is "to isolate and dispose of factually unsupported claims." Celotex Corp. v. Catrett, 477 U.S. 377, 323-33 (1986).

## IV.  Relevant Law

Title I of the ADA, 42 U.S.C. § 12112(a), and the Ohio Civil Rights Act, at R.C. § 4112.02, both prohibit employment discrimination and retaliation against disabled persons with respect to discharge or other terms, conditions, and privileges of employment.  See Taylor v. Ohio Dept. of Job & Family Servs., 2011 WL 5878335, ¶19 (Ohio App. 10 Dist) (observing that "both the ADA, 42 U.S.C. § 12112, and its state law equivalent, R.C. § 4112.02, make it an unlawful discriminatory practice for any employer to discharge the employee because of an employee's disability").

Courts have held that the analysis of such claims is largely the same under both statutes and that resolution of a plaintiff's ADA claim will, in most instances, resolve the Ohio claim as well.  Jakubowski v. The Christ Hospital, 627 F.3d 195, 201 (6th Cir. 2010) (citing Kleiber v. Honda of Am. Mfg., Inc., 485 F.3d 862, 872 (6th Cir. 2007));  Jones v. Western RTA, 455 Fed. Appx. 640, 646 (6th Cir. 2012) (same).  The Court will address the Ohio claims only where the standard differs from the ADA.

Because plaintiff is relying on indirect evidence, his claims under the ADA and Ohio R.C. § 4112.02 are subject to the familiar burden-shifting evidentiary framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Smith v. Chrysler Corp., 155 F.3d 799, 805 (6th Cir. 1998) (applying burden-shifting analysis to ADA claims based on indirect evidence);  Coryell v. Bank One Trust Co. N.A., 101 Ohio St.3d 175, 179 (2004) (applying burden-shifting analysis to Ohio R.C. § 4112 claims based on indirect evidence); Little Forest Med. Ctr. of Akron v. Ohio Civ. Rights Comm., 61 Ohio St.3d 607, 610 (1991) ("the requisite burdens of proof regarding

particular evidentiary issues established by the federal courts are relevant in determining whether there exists reliable, probative and substantial evidence of discrimination in violation of R.C. Chapter 4112").

## V. Discussion

## A. Whether Plaintiff Has Made a Prima Facie Case of Disability Discrimination

Title I of the ADA provides that: "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 4112(a).[5] Under the ADA, the plaintiff must show that his disability was a "but-for" cause of his termination. Humboldt Acquisition Corp., Inc., 681 F.3d 312, 315 (6th Cir. 2012) (en banc) (employee is not required to show that disability was sole reason for termination). See also, Price Waterhouse v. Hopkins, 490 U.S. 228, 240 (1989) ("In determining whether a particular factor was a but-for cause of a given event, we begin by assuming that that factor was present at the time of the event, and then ask whether, even if that factor had been absent, the event nevertheless would have transpired in the same way.").

Similarly, Ohio R.C. § 4112.02(A) provides that It shall be an unlawful discriminatory practice "[f]or any employer, because of the ... [disability] ... of any

_____

[5]Congress amended the ADA in 2008 to replace its former "because of" language with "on the basis of" language. ADA Amendments Act of 2008, Pub.L. No. 110–325, 112 Stat. 3553. These amendments became effective on January 1, 2009, see Milholland v. Sumner Cty. Bd. of Educ., 569 F.3d 562, 566–67 (6th Cir. 2009), and apply here, as plaintiff's termination occurred after such date.

person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." Courts may look to federal case law when analyzing employment discrimination claims brought under Ohio law. Johnson v. Washington Cty. Career Center, 2012 WL 975071, *3 (6th Cir. (Ohio)) (observing that Ohio disability discrimination claims use the same analysis as ADA claims). Reliance on federal decisions for interpretation of the Ohio statute is appropriate when the terms of the statutes are consistent or when the Ohio statute has left a term undefined. Genaro v. Cent. Transport, 84 Ohio St.3d 293, 298 (1999).[6]

To make a prima facie case of disability discrimination under the ADA, plaintiff must establish that: (1) he is disabled; (2) he is otherwise qualified for the position, with or without reasonable accommodation, (3) he suffered an adverse employment decision; (4) the employer knew or had reason to know of his disability; and (5) the position remained open, while the employer sought other applicants or the disabled individual was replaced. Whitfield v. Tenn., 639 F.3d 253, 258-59 (6th Cir. 2011) (noting that "there has been some confusion in this circuit as to the proper test") (citing Monette v. Elec. Data Sys. Corp., 90 F.3d 1173, 1186 (6th Cir. 1996), abrogated on other grounds by Humboldt, 681 F.3d at 312). The parties agree

---

[6]Ohio R.C. § 4112.02 includes the same "because of" language found in the ADA prior to 2008, and case law interprets this to require that an employee was discharged "at least in part" due to his disability. It remains to be seen whether Ohio courts will adopt the rationale of Humboldt and the "but-for" requirement.

that this five-factor test applies to plaintiff's Ohio claim (doc. no. 17 at 4, Proposed Conclusions of Law, ¶ 1).[7]

At step one, plaintiff must point to evidence that he has a disability for purposes of the ADA. Although it is undisputed that he has "diabetes mellitus type 1" (doc. nos. 17 at ¶ 4), the record is otherwise devoid of evidence showing that he is "disabled" for purposes of the ADA. The term "disability" means "a physical or mental impairment that substantially limits one or more major life activities of such individual; a record of such an impairment; or being regarded as having such an impairment." 42 U.S.C. § 12102(1). Simply having a medical diagnosis is not sufficient to establish a "disability" for purposes of the ADA. Laws v. HealthSouth N.Ky. Rehab. Hosp., 828 F.Supp.2d 889 (E.D.Ky. 2011) (granting summary judgment to employer because plaintiff did not show she was disabled under the ADA, never

_____

[7]In Whitfield, the Court of Appeals observed that courts have articulated the Monette test differently (i.e. as a three-factor or five-factor test), but that the five-factor test was correct. Regarding the three-factor ("Mahon") formulation of the Monette test, which Ohio courts and some federal courts have used, the Court of Appeals explained that "the three-element language is not used in the context of establishing a prima facie case for purposes of McDonnell Douglas, but is rather in the context of what is required for recovery under the ADA." Id. at 259. The three-factor language "more aptly describes what is required to win a judgment, not to make out a prima facie case under the McDonnell Douglas framework." Id. at 261, fn.3. Although some courts have used the three-part test for the prima facie case, the Whitfield decision explains that this impermissibly combines the prima facie and pretext stages. One recent Ohio opinion expressly considered the analysis in Whitfield and concluded that "the better articulation of the prima facie case under McDonnell Douglas in the context of disability discrimination is that described in Monette." Wagner v. Regional Med. Ctr. of Ohio, 194 Ohio App.3d 589, 597-98 (Ohio App. 9 Dist. 2011) (dissenting opinion) (noting that although it is well-established that burden-shifting applies, the Ohio Supreme Court has not specifically articulated the McDonnell Douglas prima facie case in the context of disability discrimination).

requested an accommodation, and worked full schedules). Steele has not offered any evidence that he is "disabled" within the meaning of the ADA or Ohio law. See, e.g., <u>Smith v. Waffle House, Inc.</u>, 2012 WL 2344625, *2 (M.D.Tenn.) (holding that "plaintiff has not sufficiently created a genuine issue of material fact, through admissible evidence, that he is disabled"). In any event, as this step is not disputed by the parties, the Court will proceed further.

At step two, plaintiff must point to evidence that he was a qualified individual. "The term 'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position." 42 U.S.C. § 12111(8). Oasis argues that Steele was not "qualified" because he was not performing his job properly. In other words, Oasis argues that Steele was not "qualified" because of the conduct that led to his termination. The Sixth Circuit Court of Appeals has expressly rejected this type of argument, as such argument improperly urges consideration of the firing justifications at the prima facie stage. <u>Wexler v. White's Fine Furniture, Inc.</u>, 317 F.3d 564, 574 (6th Cir. 2003) (en banc)). A court "may not consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when analyzing the prima facie case, because doing so would bypass the burden-shifting analysis and deprive the plaintiff of the opportunity to show that the nondiscriminatory reason was in actuality a pretext designed to mask discrimination." <u>Idemudia v. J.P. Morgan Chase</u>, 434 Fed. Appx. 495, 501 (6th Cir. 2011) (quoting <u>Wexler</u>, 317 F.3d at 574). The court must instead "focus on a plaintiff's objective qualifications to determine whether he or she is

qualified for the relevant job" (Id.).  The record reflects that Steele was a "qualified individual," as the record reflects that he possessed the basic skills necessary to perform his job.  He received the requisite training and performed adequately for the 2008 season, even though his job performance declined in May of 2009.

At step three, plaintiff must have suffered an adverse employment decision. The testimony reflects that plaintiff's employment was terminated, and this is not disputed (doc. no. 17 at ¶ 21).  At step four, the evidence reflects, and Oasis does not dispute, that it was aware of plaintiff's diabetic condition while plaintiff was employed at Oasis.

At step five, plaintiff alleges that he was replaced by a non-disabled employee. Oasis asserts that plaintiff was not replaced, but rather, his work was spread among existing employees (Daye Dep. at 26-27 indicating that routes were rescheduled and rotated among the remaining law technicians;  A.Reindl Dep. at 68 indicating no one was hired to replace Steele).  Plaintiff points out that one month after he was fired, Oasis hired a temporary part-time technician (Gulleman).  Although this employee may have used available equipment (i.e. the van Steele had used), the evidence also indicates Gulleman did not drive the same route as Steele (A. Reindl Dep. at 68-69).

To the extent the parties recite the fifth step as "he was replaced or similarly situated non-disabled employees were treated more favorably"(doc. no. 17 at 4, Conclusions of Law ¶ 1), Oasis points out that all of its lawn technicians were allowed to work at their own pace.  Although plaintiff had complained about the "hills and drive time" on his route, the work schedules were generated by a

computer program "RealGreen" that mapped the routes based on customer needs (Daye Dep. at 14 "the computer would generate all that"; Cooper Dep. at 67, observing that "[a]ll technicians will do that [grumble about their routes]"). Plaintiff has pointed to no evidence suggesting he was treated "less favorably" due to his diabetes. His subjective belief is unavailing.

Although plaintiff complains that he was asked to cover a portion of the damages that he caused, this does not show that he was treated "less favorably" due to his diabetes. Oasis points out that it had asked other employees who had caused significant damage to pay a portion of repair costs (A.Reindl; Dep. at 59, indicating that another lawn technician who put gasoline in a diesel engine was asked to pay half of the insurance deductible for the resulting damage; Cooper Dep. at 63, indicating that he had paid for some damage "out of pocket"). Plaintiff points to no other "similarly situated" employee who, in less than a month, generated dozens of customer complaints about damaged lawns and was not terminated.

Although it is doubtful that plaintiff has satisfied the first and fifth steps of a prima facie case of disability discrimination, the next stages of the burden-shifting analysis are dispositive. Before proceeding further, the Court will consider whether plaintiff has made a prima facie case of retaliation under the ADA and Ohio law.

## B. Whether Plaintiff Has Made a Prima Facie Case of Retaliation

Under the ADA's anti-retaliation provision, an employer may not "discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge . . . under

[the ADA]." 42 U.S.C. § 12203(a). Similarly, Ohio's anti-retaliation provision, at R.C. § 4112.02(I), provides that It shall be an unlawful discriminatory practice:

> For any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code.

Where a plaintiff relies on circumstantial evidence of retaliation, the familiar burden-shifting evidentiary framework applies. Spengler v. Worthington Cyclinders, 615 F.3d 481, 491 (6th Cir. 2010).

To make a prima facie showing of retaliation, plaintiff must show that (1) he engaged in protected activity, (2) the activity was known to the defendant, (3) plaintiff was subjected to materially adverse action, and (4) there was a causal connection between the protected activity and the adverse action. Carson v. Ford Motor Co., 2011 WL 379190, *3 (6th Cir. (Mich.)). The parties dispute only the fourth step. Plaintiff contends that he was fired the same day that he requested accommodations for his diabetic condition. Plaintiff argues that this is sufficient to show a causal connection with his termination. Temporal proximity is usually not enough to show causation, see Mickey v. Zeidler Tool and Die Co., 516 F.3d 516, 525 (6th Cir. 2008), and generally must be "coupled with other indicia of retaliatory conduct," see Dixon v. Gonzales, 481 F.3d 324, 333–334 (6th Cir. 2007). The timing here is close.

As to whether the timing permits a reasonable inference of "causal connection, the record reflects that plaintiff requested "accommodations" only when

faced with dozens of complaints that he had "burnt" lawns and knew he might be fired.  Oasis disputes any causal connection and points out that plaintiff could admittedly work at his own pace and take all the time he needed to check his blood sugar, eat snacks, and rest or take insulin if needed.  Plaintiff acknowledges that he could do all these things during his work day (Steele Dep. at 24, 41).  Despite plaintiff's calculated effort to create the appearance of a causal connection, the evidence reflects that plaintiff was already able to do all the things he was requesting and that his supervisor had "no problem" with the requested accommodations.  There was no plausible reason for plaintiff to ask for accommodations at that time, since he already could work at his own pace and take breaks as desired or needed.  The evidence does not suggest any genuine dispute of material facts as to causal connection. <u>Anderson</u>, 477 U.S. at 256–57 (holding that, to survive summary judgment, a plaintiff must provide evidence on which a reasonable juror could return a verdict in his favor).  Steele has not set forth a prima facie case of retaliation under these circumstances.

<u>C.  Whether Oasis has Articulated Legitimate Non-Discriminatory Reasons for Terminating Plaintiff's Employment, and Whether Plaintiff Has Shown that the Stated Reasons are a Pretext for Discrimination or Retaliation</u>

Even assuming that plaintiff has set forth a prima facie case for his discrimination and retaliation claims, Oasis has articulated legitimate nonretaliatory reasons for terminating him.  <u>Harris v. Metro. Gov. of Nashville & Davidson Cty., Tenn.</u>, 594 F.3d 476, 485 (6th Cir. 2010).  An employer who does so is entitled to

summary judgment unless the plaintiff rebuts the employer's explanation by showing that it was a pretext for discrimination.  Id..  The same evidentiary framework applies to Ohio claims.  Hardgrow, 2012 WL 2311186 at ¶ 20; Wagner v. Regional Med. Ctr. of Ohio, 194 Ohio App.3d 589, 596 (Ohio App. 9 Dist. 2011).

Oasis explains that it fired Steele for poor job performance, which is a legitimate non-discriminatory reason.  Whitfield, 639 F.3d at 263 (even assuming that employee made out a prima facie claim of disability discrimination, defendant was not liable because employee's termination was due to poor performance). Oasis points out that Steele was damaging customers' lawns, that Oasis was losing customers as a result, and that plaintiff would not even admit he had caused the "fertilizer burns" or other damage on the lawns he was servicing (A.Reindl Dep. at 52, indicating Oasis lost at least one customer due to plaintiff's actions).

Plaintiff has not shown that the stated reasons were merely a pretext for discrimination and retaliation. To show that an employer's stated reasons are pretextual, a plaintiff must produce evidence that the stated reasons: (1) have no basis in fact; (2) did not actually motivate the adverse employment action; or (3) were insufficient to warrant the adverse action. Ladd v. Grand Trunk W. R.R., Inc., 552 F.3d 495, 502 (6th Cir. 2009);  Chen  v. Dow Chem. Co., 580 F.3d 394, 400 (6th Cir. 2009).  Plaintiff may also show pretext by offering evidence which challenges the reasonableness of the employer's decision.  White v. Baxter Healthcare Corp., 533 F.3d 381, 393 (6th Cir. 2008).  The ultimate question in every employment discrimination case is whether the plaintiff was the victim of intentional

discrimination.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 153 (2000).

The burden of persuasion remains with plaintiff at all times.  Harris, 594 F.3d at 485.

Plaintiff has not pointed to evidence showing that Oasis' decision was a pretext for discrimination.  His subjective belief that Oasis' proffered reason is false is not sufficient to withstand summary judgment.  Mitchell v. Toledo Hosp., 964 F.2d 577, 585 (6th Cir. 1992) ("[C]onclusory allegations and subjective beliefs . . . are wholly insufficient evidence to establish a claim of discrimination as a matter of law").  The record reflects that plaintiff's poor job performance was sufficient to warrant his termination and that his poor performance was  completely unrelated to his diabetes.  For example, his decision to drive a machine through a newly seeded lawn, thereby damaging it "in blatant disregard" for the customer's property, had nothing whatsoever to do with his diabetes or any purported need for accommodations. Plaintiff's poor performance was a legitimate reason for his discharge.  Whitfield, 639 F.3d at 263 (affirming that defendant was not liable because employee's termination was due to poor performance).

Plaintiff has not shown any evidence that the stated reasons for his discharge were false, did not actually motivate his termination, or were insufficient to motivate the employer's decision to terminate his employment.  Although he complains that there is no "documentary evidence" (i.e. photographs) of the lawn damage, this does not show that the stated reasons were "false" or "insufficient" to justify his termination.  The record contains ample evidence of significant lawn damage.  The deposition testimony of Rob Reidel, Jeff Cooper, Robert "Hes" Coolidge, Angela

Reindl, and Heather Daye, reflects that they all personally observed the lawn damage by Steele and/or received customer complaints about it (see, e.g., Coolidge Dep. at 8, 25-26 "It had been burned, really burned;"  Daye Dep. at 18-21, indicating that Oasis had received an unusually large number of customer complaints about "burnt lawns" serviced by Steele). Oasis lost at least one customer due to plaintiff's actions (A.Reindl Dep. at 52;  Cooper Dep. at 60).  Oasis had to repair this lawn damage and incurred significant expense in doing so.  Although plaintiff quibbles about the exact number of damaged lawns and the exact dollar amount of cost of repair, this does not show that his termination was pretextual.

Although plaintiff denies causing the damage, "at the summary judgment stage, we must look to the evidence and the facts, not to labels and allegations." Steward v. New Chrysler, 2011 WL 338457, *7 (6th Cir. (Mich.)).  "Intentional discrimination cannot be proven by conclusory allegations made by the charging party." Lascu v. Apex Paper Box Co., 2011 WL 3860508, ¶ 27 (Ohio App. 8 Dist.); Minter v. Cuyahoga Comm. College, 2000 WL 193250, *6 (Ohio App. 8 Dist.)); Hollowell v. Soc. Bank & Trust, 78 Ohio App.3d 574, 580–581 (1992).

Plaintiff has not presented evidence from which a jury could reasonably infer that his discharge was a pretext for discrimination.  Sybrandt v. Home Depot, U.S.A., Inc., 560 F.3d 553, 558-59 (6th Cir. 2009).  Although the summary judgment standard requires that evidence of record be viewed in the light most favorable to the nonmoving party, it does not require that all bald assertions and subjective unsupported opinions asserted by the nonmoving party be adopted by a court.  "At

the summary judgment stage, the issue is whether the plaintiff has produced evidence from which a jury could reasonably doubt the employer's explanation." Chen, 580 F.3d at 400 n. 4.  Plaintiff has not done so.

Moreover, "as long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect." Sybrandt,  560 F.3d at 558;  Majewski v. Auto. Data Processing, Inc., 274 F.3d 1106, 1117 (6th Cir. 2001).  To challenge an employer's business judgment, plaintiff must produce evidence that could support a finding that the employer's decision was unreasonable, or, "so ridden with error that defendant could not honestly have relied upon it." Wexler, 317 F.3d at 576;  Brooks v. Davey Tree Expert Co., 2012 WL 1293578, *8 (6th Cir. (Tenn.)) (explaining that in determining whether an employer "reasonably relied on the particularized facts then before it . . . the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action").  The evidence of record, including the numerous customer complaints and the testimony regarding lawn damage by Steele, reflects that Oasis made a reasonably informed and considered decision when it fired him.  Plaintiff has not shown that such decision was an unreasonable exercise of business judgment.  The record reflects abundant and uncontroverted evidence that no discrimination or retaliation occurred. Reeves, 530 U.S. at 148.

### D.  Plaintiff's Claim of Defamation Per Se

In Count Five, plaintiff alleges that, after his termination, "when co-workers would ask about him, defendant falsely accused plaintiff of damaging the property of company clients" (doc. no. 1 at ¶ 33). He alleges that the defendant "made these statements knowing that they were false and with deliberate intent to injure plaintiff's reputation"(¶¶ 61-62).

"Defamation per se" occurs when language is defamatory on its face. See 35 Ohio Jur., Section 5, Defamation And Privacy; see, e.g., Potts v. Wilson, 54 Fed. Appx. 190, 2002 WL 31845119 (6th Cir. (Ohio)). To prevail, plaintiff must show that (1) a false statement of fact was made, (2) the statement was defamatory, (3) the statement was published, (4) plaintiff suffered injury as a proximate result of the publication, and (5) defendant acted with the required degree of fault in publishing the statement. Byrne v. Univ. Hosps., 2011 WL 3630483, *3 (Ohio App. 8 Dist.) (citing Pollock v. Rashid, 117 Ohio App.3d 361, 368 (1996)).

Although plaintiff alleges that Oasis made "false" statements to co-workers about him damaging customers lawns, he has not pointed to any evidence that his employer actually made any such statements, much less that they were false. Oasis points out that plaintiff did in fact damage numerous customers lawns and that any statements to that effect would be true, based upon the undisputed evidence of record. The Court agrees.

Oasis further points out that under Ohio law, statements made between employees of the same company on a work-related matter are conditionally privileged and not actionable as "defamation," unless done with actual malice.

<u>Hahn v. Kotten</u>, 43 Ohio St.2d 237, 243-44 (1975) (citing with approval, <u>West v. Peoples Banking & Trust Co.</u>, 14 Ohio App.2d 69, 72 (1967)); <u>Cittadini v. Southwest Gen. Health System</u>, 2011 WL 6316792, ¶ 29 (Ohio App. 8 Dist.) (granting summary judgment to employer on former employee's defamation claim).

Oasis explains that after terminating plaintiff, it spread his duties among existing employees. Any references by Oasis management to questions about the reason for reassignment of duties was a reasonable response for a proper purpose. <u>Laserworks v. Pitney Bowes, Inc.</u>, 105 Fed.Appx. 657, 662 (6th Cir. 2004) (affirming district court's finding of qualified privilege for statements because Ohio Supreme Court recognizes a qualified privilege "where the publisher and the recipient have a common interest, and the communication is of a kind reasonably calculated to protect or further it") (citing <u>Hahn</u>, 331 N.E.2d at 718).  Oasis' employees were responsible for repairing the lawn damage caused by plaintiff, and any references or explanations for the reason for such damage, instructions for repairing the damage, and steps to prevent its recurrence, were made in good faith for a proper purpose, i.e. furtherance of its own business operations. <u>Hahn</u>, 331 N.E.2d at 720 (explaining that good faith exists where the relationship between the publisher and recipient of the statement is of such a nature as "to afford reasonable ground for supposing an innocent motive for giving information, and to deprive the act of an appearance of officious intermeddling with the affairs of others") (citing <u>West</u>, 236 N.E.2d at 682).  Plaintiff points to no evidence whatsoever that any comments were made with "actual malice." He acknowledges that he has not been harmed by any

such statements (Steele Dep. at 31). In short, there are no genuine disputes of material fact regarding this claim.

## VI.  Conclusion

Even construing the evidence in plaintiff's favor for purposes of summary judgment, it is doubtful that plaintiff has set forth prima facie cases of disability discrimination and retaliation under the ADA and Ohio law. Even assuming that plaintiff has done so, Oasis has articulated legitimate, nondiscriminatory reasons for its decision to terminate plaintiff's employment, which plaintiff has failed to rebut. Plaintiff has failed to show that the stated reasons for his termination were merely a pretext for discrimination and/or retaliation, and therefore, the defendant is entitled to summary judgment.  The evidence also reflects no genuine disputes of material fact regarding plaintiff's defamation claim.  Defendants are entitled to summary judgment in their favor on all claims.

## VII.  Oral Argument Not Warranted

Local Rule 7.1(b)(2) provides that courts have discretion whether to grant requests for oral argument.  The parties have extensively briefed the issues.  The Court finds that the pleadings and exhibits are clear on their face and that oral argument is not warranted here.  Yamaha Corp. of Am. v. Stonecipher's Baldwin Pianos & Organs, 975 F.2d 300, 301-02 (6th Cir. 1992);  Schentur v. United States, 4 F.3d 994, 1993 WL 330640 at *15 (6th Cir. (Ohio)) ("district courts may dispense with oral argument on motions for any number of sound judicial reasons" and finding that the district court acted within its authority).

In accordance with the foregoing, the defendant' "Motion for Summary Judgment" (doc. no. 10) is GRANTED, with costs to be born by plaintiff.

This case is DISMISSED and TERMINATED on the docket of this Court.

IT IS SO ORDERED.

                                **s/Herman J. Weber**
                                **Herman J. Weber, Senior Judge**
                                **United States District Court**